FILED
United States Court of Appeals
Tenth Circuit

February 26, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ZACHARIAH J. TURNER,

Defendant-Appellant.

No. 08-3169

(D. of Kan.)

(D.C. No. 07-CR-10219-01-MLB)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.[**]

Zachariah J. Turner pleaded guilty to being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g)(1).  The district court subsequently

sentenced Turner to a 110-month prison term.

On appeal, Turner argues that the district court erred in its sentencing

determination under the United States Sentencing Guidelines when it enhanced

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

his sentence for obstruction of justice. Exercising jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we find the district court did not err in making its sentencing determination. We therefore affirm.

## I. Background

Wichita police officers arrested Turner and his colleague Jeffrey Heider during an investigation of a drive-by shooting. The next day, police officers obtained a search warrant for a trailer home where they suspected Turner, Heider, and a woman named Tabitha Decker lived. During a search of the trailer, the officers found what appeared to be marijuana and methamphetamine, several rounds of live ammunition, and a .22 caliber rifle. They also found Turner's driver's license and other items suggesting that Turner resided in the trailer home. The rifle was located in the closet of a bedroom where Turner apparently slept and stored his personal items. Turner had previously been convicted and incarcerated for burglary and distribution of cocaine.

Turner was indicted for being a felon in possession of a firearm and initially pleaded not guilty to the offense. While in custody, Turner made phone calls to Decker, in which Turner asked whether Decker "had his back" regarding the rifle the police found in the trailer home. R. Vol. III at 6. The calls between Turner and Decker were intercepted and recorded as a matter of course by prison authorities. After listening to the taped calls, a detective with the Sedgwick County Sheriff's Department interviewed Decker, suspecting that Turner might

-2-

have been encouraging Decker to lie. During the detective's first interview with Decker, she claimed the rifle the police found in the trailer belonged to her boyfriend and she had placed the rifle in Turner's bedroom closet without Turner's knowledge.

After the first interview, however, Decker contacted the United States Marshals Service and told them she had received death threats from Heider. The Marshals relayed this information to investigators, and a detective again interviewed Decker. Decker told him that she had concocted her original story to protect Turner. She also gave him numerous undated letters she had received from Turner and Heider. In one letter, Turner stated, "we got to get the story down – for trial." R. Supp. Vol. I, Ex. 2. In another, he wrote:

> If were [sic] going to trial. Tabatha Decker! Im [sic] yelling your name. . . . I need you sober . . . . I need you to reherse [sic] your lines everyday. I need to charm the people. I repet [sic]. There to your knowledge was no dope in the house. Im [sic] trying to salvage what I can. Your ex beat you I don't know but give me your hole [sic] story line. . . . There was nothing in the closet that belong [sic] to me.

R. Supp. Vol. I, Ex. 3. Later in the same letter, Turner wrote, "if they back you into a corner the gun is mine OK." *Id.* Decker told the detective that in her original story, her explanation for possessing the rifle was that her current boyfriend gave it to her so she could protect herself from her ex-boyfriend, who was incarcerated but might find and attack her after he was released from prison.

Based on these events, the government filed a superseding indictment charging Turner with both being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and obstruction of justice in violation of 18 U.S.C. § 1512(b)(1). Turner pleaded guilty to being a felon in possession of a firearm, and the government dismissed the obstruction of justice charge. Turner's Presentence Investigation Report recommended that Turner receive a two-point enhancement for obstruction of justice.

At Turner's sentencing hearing, the government called the detective to testify regarding Turner's alleged obstruction of justice and introduced into evidence Turner's letters to Decker. The district court found that "the evidence is sufficient to satisfy the preponderance of the evidence standard that this Defendant was attempting to influence, wrongfully influence, the testimony of this witness Decker with respect to . . . whether he had possession of this particular .22 rifle." R. Vol. III at 30. The court applied a two-level sentencing enhancement to account for this conduct, and sentenced Turner to 110 months in prison.

## II. Analysis

Turner's sole argument on appeal is that the sentencing court erred when it applied the Guidelines to impose a two-point enhancement for obstruction of justice. We reject this argument and affirm Turner's sentence.

In assessing the sentencing court's application of the Guidelines, we review factual findings for clear error and legal conclusions *de novo*. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). A district court's conclusion that a defendant obstructed justice under the Guidelines is a factual finding subject to clear error review. *See United States v. Heckard*, 238 F.3d 1222, 1232 (10th Cir. 2001). To be clearly erroneous, the sentencing court's findings must be implausible or impermissible in light of the entire record on appeal. *United States v. Zapata*, 546 F.3d 1179, 1192 (10th Cir. 2008).

> The Guidelines' obstruction of justice enhancement applies if
>
> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

USSG § 3C1.1 (2006). Under the Guidelines, "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." *Id*. cmt. 3. Obstructive conduct includes persuading a potential witness to lie. *See Heckard*, 238 F.3d at 1232–33; *United States v. Farnsworth*, 92 F.3d 1001, 1011 (10th Cir. 1996); *see also* USSG § 3C1.1 cmt. 4(b) (obstructive conduct includes "attempting to suborn perjury").

Turner claims the detective's testimony and Turner's letters did not show by a preponderance of the evidence that a Guidelines enhancement was warranted.

Turner argues that no inferences could be drawn from the evidence to support the enhancement, and that the evidence only shows Turner encouraged Decker to "tell the truth if she were asked to do so" and be "ready for trial." Aplt. Br. 10–11. On appeal, however, we must "view the evidence and inferences therefrom in the light most favorable to the district court's determination." *United States v. Mozee*, 405 F.3d 1082, 1088 (10th Cir. 2005). Viewed in this way, the evidence is more than sufficient to support the district court's Guidelines enhancement.

First of all, the detective testified at the sentencing hearing that Decker concocted a false story to protect Turner and then later recanted this story. Turner's phone conversations and letters show that he wanted Decker to adhere to her false story and testify favorably on his behalf. The letters also show that Turner was aware of specific elements of the false story, including Decker's supposed justification for possessing the rifle, which was to protect herself from her violent ex-boyfriend. Finally, one of Turner's letters informed Decker that she should tell the truth and admit that the gun was Turner's only if she was "cornered." Viewed in a light most favorable to the district court, the detective's testimony, coupled with Turner's letters to Decker, shows that Turner encouraged Decker to lie on the witness stand at trial.

Because this conduct plainly fits the definition of "obstructive conduct" under USSG § 3C1.1, we discern no error in the district court's findings.

## III. Conclusion

For the foregoing reasons, we affirm Turner's sentence.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge